IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                       No. 05-20377 B

DENFORD L. GALLOWAY,

    Defendant.

_____

ORDER DENYING MOTION TO SUPPRESS
_____

       The Defendant, Denford L. Galloway, has been charged, along with sixteen others, in a seven-count indictment on charges of conspiracy to possess drugs with intent to distribute. Before the Court is the Defendant's motion to suppress from introduction into evidence the fruits of wire communications intercepted pursuant to a sealed order entered September 16, 2005 in Western District of Tennessee Misc. Case No. 05-WT-003. The interception occurred on a cellular telephone bearing ESN No. 09700681126 and assigned telephone number 901.282.6185, subscribed to by Galloway at 4795 Southern Hill Drive in Memphis, Tennessee. A hearing was conducted on November 20, 2006.

       In his motion, the Defendant argues that (1) the warrant was fatally defective due to a lack of probable cause and (2) law enforcement officers failed to strictly comply with the requirements of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. § 2510, et seq. (sometimes referred to as the "Act").  As the Court has previously determined that

probable cause existed for the warrant,[1] it will in this order only address the second issue.

"Title III sets forth a comprehensive legislative scheme regulating the interception of oral and wire communications. [The Act] attempts to strike a delicate balance between the need to protect citizens from unwarranted electronic surveillance and the preservation of law enforcement tools needed to fight organized crime." United States v. Kinney, No. SI4:05CR280ERW(MLM), 2005 WL 2931937, at *2 (E.D. Mo. Nov. 3, 2005) (citing United States v. Phillips, 540 F.2d 319, 324 (8th Cir. 1976)). The Act "generally prohibits the interception of wire, electronic, and oral communications," except in certain circumstances and only if specific procedures are followed. See Bartnicki v. Vopper, 532 U.S. 514, 515, 121 S. Ct. 1753, 1754, 149 L. Ed. 2d 787 (2001); United States v. Galbreath, No. 4:01CV173DJS(MLM), 2001 WL 1867966, at *1 (E.D. Mo. Aug. 29, 2001). The statutory "minimization requirement" prescribes that interceptions pursuant to the Act "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under [the statute], and must terminate upon attainment of the authorized objective[.]" 18 U.S.C. § 2518(5). A defendant is authorized to

> move to suppress the contents of any wire or oral communication intercepted . . ., or evidence derived therefrom, on the grounds that --
>
> (i)   the communication was unlawfully intercepted;
> (ii)  the order of authorization or approval under which it was intercepted is insufficient on its face; or
> (iii) the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2518(10)(a). The Supreme Court has noted that this subsection "requires suppression of only those conversations which were illegally intercepted, not suppression of all the intercepted

---

[1]The Court incorporates its oral findings of November 20, 2006 regarding the denial of the motion to suppress based on lack of probable cause.

conversations." Scott v. United States, 436 U.S. 128, 135 n.10, 98 S. Ct. 1717, 172 n.10, 56 L. Ed. 2d 168 (1978); see also United States v. Stevens, 800 F. Supp. 892, 913 (D. Haw. 1992) ("even if a few of . . . the intercepted phone calls were inadvertently minimized improperly, the court need not invalidate the entire results of the wiretap").

The Defendant's motion is based upon subsection (iii). "In reviewing whether the statutory minimization requirement is met, [the Court is to] examine the reasonableness of the agents' efforts to refrain from monitoring conversations deemed nonpertinent to the investigation." United States v. Ramirez, 479 F.3d 1229, 1242 (10th Cir. 2007) (citation and internal quotation marks omitted). Reasonableness is to be determined based on the facts of the particular case. United States v. Willis, 890 F.2d 1099, 1101 (10th Cir. 1989); United States v. Soto, No. 05-10121-11-MLB, 2006 WL 1313385, at *5 (D. Kan. May 11, 2006). The Court is to first "examine the general minimization effort involved in the wiretap" and, second, review "the particular efforts to minimize made specifically with regard to [the Defendant]." Willis, 890 F.2d at 1101. "More extensive wiretapping is reasonable when the conversations are in the jargon of the drug trade." Kinney, 2005 WL 2931937, at *16 (quoting United States v. Williams, 109 F.3d 502, 507 (8th Cir.), cert. denied, 522 U.S. 917, 118 S. Ct. 303, 139 L. Ed. 2d 234 (1997)); see also United States v. Mansoori, 304 F.3d 635, 645-46 (7th Cir. 2002), cert. denied sub nom. Cox v. United States, 538 U.S. 967, 123 S. Ct. 1761, 155 L. Ed. 2d 522 (2003) (recognizing the use of code language as common among narcotics traffickers); Soto, 2006 WL 1313385, at *5 (spot monitoring of family and work calls has been found permissible in cases involving drug offenses where the government's witnesses testified that dealers often use code words for drugs). The same is true when the investigation is focused on what is believed to be a widespread conspiracy. See Scott, 436 U.S. at 130-32, 140, 142, 98 S. Ct. at

1719-20, 1724-26.; United States v. McGuire, 307 F.3d 1192, 1200 (9th Cir. 2002); United States v. Ozar, 50 F.3d 1440, 1448 (8th Cir.), cert. denied, 516 U.S. 871, 116 S. Ct. 193, 133 L. Ed. 2d 128 (1995).  Since conversations generally bounce among various topics, periodic "spot" checking of minimized communications is not unreasonable.  Monsoori, 304 F.3d at 648.  Minimization of calls of short duration is not required.  United States v. Dumes, 313 F.3d 372, 380 (7th Cir. 2002), cert. denied sub nom. McReynolds v. United States, 538 U.S. 914, 123 S. Ct. 1499, 155 L. Ed. 2d 239 (2003).

As the Supreme Court has observed, "[b]ecause of the necessarily ad hoc nature of any determination of reasonableness, there can be no inflexible rule of law which will decide every case. The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to minimize the interception of such conversations." Scott, 436 U.S. at 139-40, 98 S. Ct. at 1724 (internal quotation marks omitted).  "It is not enough for the [Defendant] to identify particular calls which they contend should not have been intercepted; [he] must establish a pattern of interception of innocent conversations which developed over the period of the wiretap." United States v. Lawson, 780 F.2d 535, 540 (6th Cir. 1985) (citation omitted).  The burden of establishing a lack of minimization lies with the Defendant. United States v. Giacalone, 853 F.2d 470, 482 (6th Cir.), cert. denied, 488 U.S. 910, 109 S. Ct. 263, 102 L. Ed. 2d 251 (1988).  "When fulfilling its obligation to minimize unauthorized communications, the government is held to a standard of honest effort; perfection is usually not attainable, and is certainly not legally required." United States v. Lopez, 300 F.3d 46, 57 (1st Cir. 2002) (citation and internal quotation marks omitted).

Out of approximately 1,234 calls intercepted by the Government, the Defendant takes issue

with 134 calls between him and his wife; several dozen contacts with his daughter, who was a college student; 17 telephone communications between Galloway and Greg Montgomery, identified as a real estate client of Galloway who was not a target of the investigation; two completely recorded calls in which the Defendant ordered pizza and 59 instances of him retrieving voice mail messages. He claims that these calls violated paragraph 9 of the Court order authorizing the wiretap, which provided as follows:

> Monitoring of conversations must immediately terminate when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119 of Title 18, United States Code. Interception must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named Interceptees or any of their confederates, when identified, are participants in the conversation unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature.

(Order Authorizing the Interception of Wire Communications at 6)  It is the position of the Defendant that the first sentence paragraph 9 prohibits "spot monitoring" engaged in by the agents in this case.

At the hearing, testimony was adduced from Raymond Keith Brown, a group supervisor and special agent with the Drug Enforcement Agency for 12 years. He had been involved with Title III wiretaps for 11 years and with some 15 to 20 multiple wire interceptions. In September and October of 2005, Brown supervised the wiretapping of the Defendant, spending time in the wire room, overseeing calls taken and reviewing line sheets. Line sheets consist of a summary of telephone calls; the date and time of each call; whether it was incoming or outgoing; whether the subject matter was pertinent, minimized or privileged; and a summary of the conversation. He described his understanding of minimization as attempting to reduce the interception of calls unrelated to the criminal investigation, pursuant to guidelines provided to the agents.

On May 24, 2005, a memorandum was issued to monitoring agents by the United States Attorney's office which contained the guidelines for wiretapping operations and outlining the categories of legally privileged communications. The memorandum also instructed that the agents must read the warrant affidavit, application and order authorizing the wiretap. Each agent signed the memorandum to acknowledge that he was aware of its contents. The memorandum advised agents that they were permitted to "spot monitor" the wiretapped telephone. "Spot monitoring" was defined by the testifying agent as a process utilized to comply with minimization requirements by allowing an officer to listen for one to two minutes in order to determine the direction and nature of the call. If the communication did not pertain to the investigation, then agent was to suspend monitoring or recording. He could, however, return to the call to ascertain whether the subject matter had changed or if new parties had joined the conversation. Brown noted that persons involved in drug dealing are often aware of the possibility their communications will be intercepted and develop code words in an attempt to mask the meaning of their discussions. He also denied that every call was spot monitored. The agent acknowledged that some of the conversations involved family members and that there was no information these persons were engaged in criminal activity. Nonetheless, family conversations continued to be spot monitored. Galloway argues that, according to the "immediately terminate" language in paragraph 9 of the order, once it is determined by the officers that the conversation is unrelated to criminal activity, all monitoring of that conversation must cease and the call cannot be intercepted again.

Upon hearing oral argument following the testimony, the Court concluded that the Defendant's reading of the first sentence of paragraph 9 was overly narrow and that spot monitoring was permitted by the order authorizing the wiretap. In reviewing charts submitted by the parties as

a factual stipulation to be considered by the Court in this matter, it is clear that the majority of the interceptions lasted less than two minutes. "Interception of the first two to three minutes of calls does not violate the minimization requirement." Soto, 2006 WL 1313385, at *5; see also United States v. Losing, 560 F.2d 906, 909 & n.1 (8th Cir.), cert. denied, 434 U.S. 969, 98 S. Ct. 516, 54 L. Ed. 2d 457 (1977) (calls of less than two or three minutes in length not violative of the statute, particularly in case involving alleged conspiracy encompassing numerous individuals). Those lasting longer than two minutes total twenty-two: ten between Galloway and his wife, three between the Defendant and his daughter; three between Galloway and Montgomery, one involving a food order, and five voice mail retrievals. Fourteen of these calls were between two and three minutes in length and, the Court finds, do not violate the minimization requirement. See id.

Calls 1111 and 1112 between Galloway and his wife appeared to the monitors to concern criminal activity, that is, the creation of an alibi for the Defendant's stepson, who was incarcerated at the Shelby County Jail awaiting trial for murder. In Call 344, the two discussed the pending murder case and, during a conversation relating to an auto accident, the Defendant expressed hope that his daughter did not get in trouble by giving the insurance company information concerning her whereabouts. Call 824 consisted of a brief conversation about cleaners and a cleaning bill, which could have used code words for criminal activity considering the "rather odd" subject matter of the call. Call 884, which included a brief communication with a truck driver, was monitored because Galloway was a deputy sheriff who had no apparent involvement with the trucking business. In Call 1043, Galloway made arrangements for a rental car. Information concerning that rental could have assisted officers' efforts to conduct surveillance on the Defendant.

The Court finds that the Government's minimization efforts in this case were not

7

unreasonable. The instant prosecution involves numerous defendants for drug offenses. Thus, the Government is accorded latitude in conducting the wiretaps. See McGuire, 307 F.3d at 1200, supra; Soto, 2006 WL 1313385 at *5, supra. Moreover, the Government took precautions to minimize nonpertinent recording by thoroughly instructing monitoring agents on the minimization procedure and requiring their acknowledgment that the memorandum containing the procedures had been read by each of them. In addition, according to the order, Government prosecutors were directed to provide the Court with a report every ten days indicating the progress of the wiretap operation. See Lopez, 300 F.3d at 58 (minimization reasonable where government established and observed precautions to effect minimization and where there was significant judicial supervision over the surveillance activities). Of the large number of intercepted calls, a very small number have been identified by the Defendant as arguably unrelated to the drug conspiracy. Even if some of these calls were improperly minimized, the Defendant has made no showing that he was prejudiced in any way thereby. See id. (defendant was not prejudiced by improper minimization of two nonpertinent calls).

Finally, the Defendant's contention that the Government violated the spousal privilege by monitoring calls between him and his wife appears to be without merit, based upon the Government's assertion, which is not disputed by Galloway, that the two were separated at the time of the interceptions. See United States v. Porter, 986 F.2d 1014, 1019 (6th Cir.), cert. denied, 510 U.S. 933, 114 S. Ct. 347, 126 L. Ed. 2d 312 (1993) (spousal communication protection is to be applied narrowly and thus does not extend to couples permanently separated).

For the reasons articulated herein, the motion to suppress is DENIED.

IT IS SO ORDERED this 27th day of April, 2007.

                                              s/ J. DANIEL BREEN
                                              UNITED STATES DISTRICT JUDGE